

*U.S. Department of Justice*

*United States Attorney*
*District of Maryland*

*Adeyemi O. Adenrele*  *Suite 400*  *DIRECT: 410-209-4819*
*Assistant United States Attorney*  *36 S. Charles Street*  *MAIN: 410-209-4800*
*Adeyemi.Adenrele@usdoj.gov*  *Baltimore, MD 21201-3119*  *FAX: 410-962-2310*

July 22, 2025

**VIA ECF**

The Honorable James K. Bredar
United States District Judge
U.S. District Court for the District of Maryland
101 W. Lombard St.
Baltimore, MD 21201

      Re:    *United States v. Aaron McNeil*
             Criminal No. JKB-24-035

Dear Judge Bredar:

     I write in advance of sentencing in the above matter for Defendant Aaron McNeil ("McNeil" or "Defendant"), scheduled for August 5, 2025 at 11:00 a.m., to provide the Court with the Government's position. The Defendant's degree of culpability in this criminal conspiracy is higher than Robert Stewart ("Stewart"), who was sentenced to ninety-six months, but less than Vacshon Brown ("Brown"). The Government recommends 120 months of incarceration.

### I.    Factual Background[1]

     Based on a tip from DEA New Jersey, in May 2022, DEA Baltimore began investigating a drug trafficking organization ("DTO"), including Brown, McNeil, Stewart, and others. Throughout the investigation, law enforcement learned that Brown supplied McNeil with drugs and McNeil, Stewart, and others sold those drugs on the 600 block of North Carrollton Ave., Baltimore, Maryland. After a portion of the proceeds went back to Brown, Brown often laundered those funds through various shell company accounts and used those drug proceeds to buy properties, cars, and other luxury items.

     Later, in January 2023, investigators observed Brown and McNeil at a downtown Baltimore hotel together. After stopping at a corner store together, the two went back to the hotel. Brown then left the hotel without McNeil. When McNeil eventually left in his Hyundai with expired tags, investigators requested that BPD officers assist in conducting a traffic stop of McNeil. BPD officers did so, patted McNeil down, and found substances later identified as

---

[1] This Factual Background section is consistent with the Stipulation of Facts in the Plea Agreement in this case.

The Honorable James K. Bredar
Page 2

cocaine and fentanyl. They arrested McNeil, obtained a state warrant for the hotel room, and found a loaded polymer handgun and drug packaging equipment. Video surveillance also showed Brown entering the room and exiting with his pockets full shortly thereafter.



Investigators, later, learned that the DTO had a stash house at 622 North Carrollton Ave. (the "Carrollton House"). McNeil managed the Carrollton House. Other members of the DTO who sold the drugs supplied by Brown on the 600 block of North Carrollton Avenue reported to the Carrollton House almost daily and conducted hand-to-hand sales. On occasion, Brown would go to the Carrollton House to check on the drug shop and meet with McNeil. For example, on April 13, 2023, investigators surveilled Brown on the 600 block of N. Carrollton Avenue. After speaking to a few other males, Brown returned to his vehicle and McNeil entered the passenger seat. The two drove down N. Carrollton Avenue and the Brown dropped McNeil off at on Edmondson Avenue, a short distance away. After exiting Brown's vehicle, McNeil walked back to the 600 block of N. Carrollton Avenue.

McNeil also used another stash location at 211 Beale Court ("Beale House"). McNeil stored bulk amounts of drugs, that he received from Brown, and drug proceeds, some of which went back to Brown. Based on a GPS tracker on McNeil's vehicle and Citiwatch cameras, investigators tracked McNeil often traveling between the Beale House and the Carrollton House. For example, on June 2, 2023, investigators tracked McNeil's vehicle travel to the Beale House four times and Carrollton House three times. Investigators also observed McNeil using a key to enter the Beale House carrying a black satchel, staying inside for several hours, others arriving at the Beale House with large duffel bags, and leaving a short time later without the duffel bags while McNeil was still inside.

On July 25, 2023, the Honorable A. David Copperthite signed fifteen warrants for various premises, vehicles, and persons related to the ongoing drug trafficking conspiracy. Upon execution of all the warrants, agents seized over 2 kilograms of fentanyl, around 1.5 kilograms of cocaine, almost 800 grams of cocaine base, hundreds of grams of cut, as well as drug packaging and manufacturing equipment. Investigators discovered and seized the vast majority of drugs from

stash houses exclusively accessed by Brown. However, Brown supplied McNeil with those drugs which were sold on the street of the 600 block of North Carrollton Avenue.

Investigators also seized drugs and a firearm directly from locations accessed by McNeil. The Maryland State Police SWAT Team executed a search warrant on McNeil's primary residence at 1221 N. Patterson Park Avenue. The SWAT Team intentionally executed the warrant while McNeil was not at home. The following relevant items were seized:

- 13.59 grams of a mix of fentanyl, cocaine, and cut found in a black backpack from the second floor middle bedroom;
- 10.88 grams of fentanyl and cut found in a plastic bag from the second-floor middle bedroom; and
- Smith & Wesson 36, .38 special revolver (serial number 187745) loaded with four rounds.

Investigators also executed a warrant at the Beale House. It was unoccupied at the time agents entered the residence. The second-floor front bedroom had female personal items. In the second-floor rear bedroom, there was a twin bed, shoe boxes, shelving units, male clothing, and totes stacked along the back wall. From a black backpack inside one of the totes, investigators seized:

- 280.3 grams of fentanyl/quinine
- Digital scale and drug packaging supplies
- Card reading "Happy Birthday Aaron."

Outside of the totes were clear gelatin capsules, a plastic Target bag with two measuring cups, and a white powdery substance in two separate sandwich bags containing no controlled substances.

## II.     Criminal History

According to the Presentence Investigation Report ("PSR"), McNeil's criminal history falls into category II. PSR (ECF No. 141) ¶ 39. The Government does not object to the PSR's criminal history analysis, and the Defendant has not objected to the PSR's finding.

## III.    Sentencing Guidelines Calculation

The PSR notes that Defendant's Total Offense Level is 33. PSR ¶ 30. It reaches this conclusion after allocating a base offense level of 32 because the amount of CDS seized as part of the conspiracy amounted to at least 3,000 kilograms but less than 10,000 kilograms of converted drug weight. PSR ¶ 20. However, the Defendant accepted responsibility and timely notified authorities of his intention to plead guilty. PSR ¶¶ 28, 29. This led to a decrease of three points and a Total Offense Level of 33. PSR ¶¶ 28-30. Based on his criminal history and guidelines calculation, McNeil's sentencing guidelines range is 151 to 188 months of imprisonment. PSR ¶ 96.

### IV. Factors Set Forth in 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), a sentencing court "shall impose a sentence sufficient, but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). The sentencing court should consider various factors, including (among other things):[2]

- the nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. §3553(a)(1));

- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(A)-(C));

- the applicable sentencing guidelines range ((18 U.S.C. § 3553(a)(4)); and

- the need to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (18 U.S.C. § 3553(a)(6)).

In this case, the § 3553(a) factors favor a sentence of 120 months' imprisonment. This recommendation is below the guidelines range but above Stewart's sentence. The Government will address certain factors in the following sections.

#### a. The Nature and Circumstances of the Offense and the Need for the Sentence Imposed to Reflect the Seriousness of the Offense

The conduct of this Defendant is egregious. Fentanyl is a particularly dangerous and deadly drug, even in small amounts. The quantity of fentanyl seized from various locations in this conspiracy, including locations accessed directly by McNeil is high. Importantly, McNeil was responsible for that fentanyl reaching the streets of Baltimore. Of note, when a warrant was executed on his primary residence, both, fentanyl and a firearm were found. However, the Government recognizes that McNeil is taking responsibility for his actions and he is less culpable in this conspiracy than Brown.

#### b. The History and Characteristics of the Defendant

The Defendant is currently forty-one years old but has been involved in the criminal justice system since he was, at least, seventeen. PSR ¶ 32. The PSR thoroughly reviews that criminal history and identifies that, at age eighteen, he was found guilty of CDS possession with intent to distribute as well as a conspiracy to commit same. PSR ¶ 34. In that case, detectives "observed [McNeil] dropping a bag containing a Cobray .45 caliber assault pistol loaded with 27 cartridges" and seized 255 vials with suspected cocaine. *Id.* For this crime, the court sentenced McNeil to four years' incarceration, though over three years were suspended. Similarly, though more

---

[2] The Government has not copied the entirety of § 3553(a) into this letter. The portions of the statute cited herein are the portions most relevant to this sentencing.

complex, the federal charges to which McNeil pleaded guilty also involved a drug trafficking conspiracy and firearms.

Between eighteen and thirty-two years of age, McNeil was found guilty four additional times for similar crimes. For one of those crimes, on September 17, 2012, the court sentenced McNeil to ten years but, again, suspended nearly the entire sentence. Nonetheless, this shows both a longevity and continuity of drug trafficking.

While the Defendant's criminal history category is II, the Government is mindful of the nature, circumstances, and seriousness of the convictions that received no criminal history points. Indeed, drug trafficking and the violence associated with it are serious. It leads to the perpetual dismantling of communities and, even, deaths. But the Government also acknowledges that the Defendant has never been convicted of any crimes of violence.

### c. The Need for the Sentence Imposed to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant

The sentence sought by the Government reflects the seriousness of this offense and the danger McNeil placed on our community. The state system afforded the Defendant several opportunities to correct his behavior, particularly, by significantly suspending the sentence of every drug trafficking conviction he received. It appears the Defendant failed to take advantage of those opportunities. The Government is hopeful that a 120-month term of incarceration, followed by a period of supervised release, will deter McNeil from future criminal conduct and provide him with an opportunity to rejoin society as a productive member. Such a sentence would be sufficient but not greater than necessary to accomplish the purposes of sentencing under the § 3553(a) factors.

Sincerely,

Kelly O. Hayes
United States Attorney

_____/s/_____
Adeyemi Adenrele
Assistant United States Attorney

cc: Richard B. Bardos, via ECF